[Cite as *In re Adoption of P.L.W.*, 2020-Ohio-5559.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: THE ADOPTION OF P.L.W.

C.A. No.     20CA0032-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2019 04 AD 00012

DECISION AND JOURNAL ENTRY

Dated: December 7, 2020

---

CARR, Presiding Judge.

{¶1}     Appellant, F.R., appeals from a judgment of the Medina County Court of Common Pleas, Probate Division, that determined that his consent to the adoption of his biological child was not required because he had failed to establish his right as the child's father or putative father under Ohio law. This Court affirms.

I.

{¶2}     The dispute in this case involves whether F.R., the biological father of P.L.W., born December 15, 2018, has the right to withhold his consent to the adoption of the child. At the time P.L.W. was conceived and born, the child's mother ("Mother") was married to D.W. ("Husband"), who was presumed to be the child's father. *See* R.C. 3111.03(A)(1). Mother had also been involved in an extramarital affair with F.R. and, during April 2018, they had unprotected sexual intercourse. Throughout her pregnancy, Mother did not know whether Husband or F.R. was the child's biological father.

{¶3} Although Mother ended her relationship with F.R., they communicated a few times during Mother's pregnancy. F.R. did not dispute that he knew that Mother was pregnant by June 2018, was aware that he could be the child's father, and knew that the baby was due sometime in December 2018, or January 2019. Nevertheless, F.R. did not register with the Putative Father Registry while Mother was pregnant or within 15 days after the child's birth. *See* R.C. 3107.062.

{¶4} After P.L.W. was born, without Husband's knowledge, Mother took his toothbrush to have his DNA compared to that of P.L.W. Mother told Husband about the results of the first DNA test, but he insisted that another DNA test be performed. Both DNA tests revealed that Husband was not the biological father of P.L.W. Having ruled out Husband as the child's father, Mother concluded that F.R. must be the child's biological father.

{¶5} Mother and F.R. communicated back and forth primarily via text message. F.R. expressed concern about asserting his parental rights unless he knew he was the child's father. Mother and F.R. discussed arranging DNA testing, but they did not follow through and Mother later cut off all communication with F.R. Facing the end of her marriage to Husband and not wanting to raise a child with F.R., Mother decided to place the child for adoption.

{¶6} On April 4, 2019, appellees, A.R. and M.R., filed a petition to adopt P.L.W. and attached several supporting documents. Although Mother and Husband would later dissolve their marriage, each signed a certificate to surrender their rights to the child. Husband's "Permanent Surrender of Child" indicated that, although he was married to Mother, he was not the child's biological father. The petitioners also attached a certificate from the Ohio Department of Job and Family Services, dated March 25, 2019, which indicated that a search of Ohio's Putative Father Registry revealed that no putative father was registered.

{¶7}     On May 14, 2019, the adoption petitioners filed a "Motion to Amend; Motion to Deem Consent Not Required."  They had become aware that F.R. recently filed an action in Delaware County to establish his parental rights and responsibilities to P.L.W., but they emphasized that he did not file that action prior to the adoption proceedings.  They further stressed that F.R. did not file with the putative father's registry within 15 days of the child's birth.  Therefore, the petitioners argued that F.R. lacked standing under Ohio law as the child's legal father or putative father whose consent to the adoption was required.

{¶8}     The following day, F.R. filed a motion to intervene in the adoption proceedings.  He asserted that he believed that he was the biological father of P.L.W. and that he had filed an action in Delaware County to establish his parental rights and responsibilities on April 19, 2019.  F.R. later submitted the results of DNA testing, which established that he is the biological father of P.L.W.  The same day, the trial court granted F.R.'s motion to intervene.

{¶9}     The matter later proceeded to a hearing about whether F.R.'s consent to the adoption was required.  The trial court concluded that F.R.'s consent to the adoption was not required because he had failed to establish a legal right as the child's father or putative father pursuant to Ohio law.  F.R. appeals and raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE PROBATE COURT ERRED IN DETERMINING APPELLANT TO BE A PUTATIVE FATHER AND NOT THE NATURAL FATHER OF [P.L.W.].

{¶10}     F.R.'s first assignment of error challenges the trial court's determination that he was the child's putative father who had failed to protect his right to receive notice of, and withhold his consent to, the adoption of P.L.W.  F.R. argues that the trial court erred in viewing him as the child's putative father, because he is the biological father of P.L.W., whose paternity was

established through DNA testing while this adoption proceeding was pending. Because he is the biological father of P.L.W., he asserts that he had the legal right to withhold his consent to the adoption.

{¶11} Ohio courts have long emphasized that "[t]he right to parent one's children is a fundamental right." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000), and *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). However, that right is not unlimited and any right that F.R. may have had to withhold his consent to the adoption was controlled by Ohio law. Notably, Ohio law does not grant automatic standing to the biological father of a child to withhold his consent to the child's adoption. Instead, R.C. 3107.06(B) provides that the consent of a child's "father" is generally required to an adoption if his legal status as the child's father was established in one of the following ways:

(1) The minor was conceived or born while the father was married to the mother;

(2) The minor is his child by adoption;

(3) Prior to the date the petition was filed, it was determined by a court proceeding * * *, or an administrative proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative proceeding * * * that he has a parent and child relationship with the minor;

(4) He acknowledged paternity of the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code.

{¶12} The Ohio Supreme Court has construed R.C. 3107.06(B)(3) broadly to protect an alleged father's rights, if he filed to establish his parentage in another proceeding before the adoption petition was filed. *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, syllabus. Even though the alleged father's paternity may not yet have been "determined" in the other proceeding, as long as he filed that action first, that court retains jurisdiction to determine whether he has a parent and child relationship with the child before the adoption proceeding may

proceed in the probate court. *Id.; see also In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, ¶ 1; *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, ¶ 1.

{¶13}   The evidence in this case was not disputed that F.R. did not legally establish himself as the father of P.L.W. through any of the means recognized by R.C. 3107.06(B).  Although he filed an action in Delaware County to establish a parent and child relationship, he did not file that action until after the adoption petition was filed.  Consequently, F.R. cannot be recognized as the legal father of P.L.W. pursuant to R.C. 3107.06(B)(3).  *See In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, ¶ 12.

{¶14}   Therefore, the trial court properly examined whether F.R. had preserved his rights as the "putative father" of P.L.W., who could potentially have the right to withhold his consent to an adoption.  R.C. 3107.06(C).  Although F.R. disputes that he is the "putative father" of P.L.W., he falls within that definition under Ohio law.  R.C. 3107.01(H) defines a putative father as "a man * * * who may be a child's father" who has not legally established his parental status through any of the means set forth in R.C. 3107.06(B) (without cross-referencing RC. 3107.06(B), R.C. 3107.01(H) reiterates each of those means for establishing legal standing as the child's father).  Under Ohio law, F.R. was not the legal father of P.L.W. during these proceedings, but he was the child's "putative father."

{¶15}   R.C. 3107.062 further provides, however, that "[f]or the purpose of preserving the requirement of his consent to an adoption, a putative father shall register before or not later than fifteen days after the birth of the child."  *See also* R.C. 3107.07(B)(1) (also stating that a putative father's consent to an adoption is not required if he does not timely register as the child's putative father).  The facts are also undisputed that F.R. did not register with the putative father registry

within 15 days of the birth of P.L.W. Consequently, F.R. also failed to preserve any right to withhold his consent to the adoption as the "putative father" of P.L.W.

{¶16} F.R. claims that he did not know about the putative father registry, but Ohio's adoption statutes do not provide an excuse for failing to timely register as the child's putative father. In fact, R.C. 3107.061 provides that "[a] man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to division (B) of section 3107.07 of the Revised Code." F.R. had sexual intercourse with Mother during April 2018. In fact, although not required by R.C. 3107.061, F.R. was aware that his condom broke and, afterward, he purchased Plan B emergency contraceptive for Mother as a back-up means of birth control. The facts further indicate that F.R. knew that Mother was pregnant several months before the child was born and believed that he could be the father of the child.

{¶17} F.R. failed to establish a legal right to participate in the adoption proceedings as either the father or putative father of P.L.W. Therefore, the trial court did not err in concluding that his consent to the adoption was not required. F.R.'s first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE PROBATE COURT ERRED IN DETERMINING [F.R.'S] CONSENT TO THE ADOPTION WAS NOT NECESSARY GIVEN THE FRAUDULENT CONDUCT OF MOTHER AND HER INTERFERENCE IN THE ESTABLISHMENT OF PATERNITY.

### ASSIGNMENT OF ERROR III

THE PROBATE COURT DECISION INFRINGED ON [F.R.'S] CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION[.]

{¶18} Through his second and third assignments of error, F.R. asserts that the requirements of the adoption statutes, as detailed in the disposition of his first assignment of error,

should not preclude his legal standing as the father of P.L.W. He essentially argues that, as applied to him based on the facts of this case, Ohio's adoption statutes are unconstitutional. To begin with, F.R. did not preserve this issue for appellate review because he failed to raise a timely challenge to the constitutionality of Ohio's adoption statutes in the trial court. For that reason, F.R.'s "'[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue [was] apparent at the time of trial, constitutes a [forfeiture] of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608, and 23629, 2007-Ohio-3999, ¶ 59, quoting *State v. Awan*, 22 Ohio St.3d 120, syllabus (1986).

{¶19} Moreover, the Ohio Supreme Court has upheld the constitutionality of Ohio's adoption statutes as applied to a biological father who failed to timely establish his rights as the child's father or putative father under Ohio law. *See In re Adoption of H.N.R.* at ¶ 37. Although F.R. attempts to distinguish the facts of this case from those of *H.N.R.*, he has failed to demonstrate any legal distinction. In *H.N.R.*, as in this case, the biological father was aware of the mother's pregnancy and that he might be the father, yet he "failed to utilize any of the legal processes available to secure his rights as a putative or legal father at any point prior to the initiation of [the] adoption proceedings." *Id.* at ¶ 2. For that reason, F.R. "is outside the class of persons he alleges are prejudiced by the statutory limitation." *Id.* F.R.'s second and third assignments of error are overruled accordingly.

III.

{¶20} F.R.'s assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

RICHARD MARCO, JR., Attorney at Law, for Appellee.

MICHELLE SILMAK, Attorney at Law, for S.W. and D.W.