**[Cite as *In re S.H.*, 2021-Ohio-3448.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.H.
      G.H.

C.A. No.     29884

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 13-06-419
                   DN 13-06-420

DECISION AND JOURNAL ENTRY

Dated: September 30, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, Desserai I. ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms in part, reverses in part, and remands the cause for further proceedings.

I.

{¶2} Mother and Plaintiff-Appellee, Robert H. ("Father"), are the parents of S.H., born in 2004, and G.H., born in 2008. In June 2013, they divorced and executed a shared parenting plan that provided for joint custody. Within weeks of that judgment, Summit County Children Services ("CSB") filed a complaint in Juvenile Court alleging that the children were abused, neglected, and dependent. The complaint stemmed from Mother's arrest for operating a vehicle while intoxicated ("OVI"), resisting arrest, and child endangering, as S.H. and G.H. were riding in her car at the time of her arrest. CSB also alleged that it had received two prior calls about Mother because she had shown signs of intoxication while caring for the children. As a result of

the complaint, the parties agreed that the children would be adjudicated abused and dependent, placed in Father's temporary custody, and placed under protective supervision. A guardian ad litem was appointed, and, once Mother completed her case plan objectives, the guardian ad litem and CSB recommended shared parenting. In January 2014, the court approved a shared parenting plan wherein Father was named residential parent and primary decision-maker and the parties shared companionship time.

{¶3} Between 2015 and 2016, several incidents prompted additional court filings and requests to terminate or modify shared parenting. Father accused Mother of abusing alcohol again, making decisions without him, eschewing visitation conditions, and failing to act in the best interest of the children. Mother accused Father of hindering her efforts to get the children into counseling and making unilateral decisions regarding childcare. An altercation broke out between the children while they were in Mother's care and resulted in the court placing G.H. in Father's temporary custody. Further, Mother was charged with domestic violence after she allegedly threatened the lives of Father and his new wife in the presence of G.H. The parties ultimately resolved their pending motions and disputes by way of agreement. In November 2016, they executed a revised shared parenting plan that named Mother residential parent and legal custodian and provided for shared companionship time.

{¶4} In July 2017, Father accepted a job in Florida, and the parties amended their shared parenting plan to include provisions related to his relocation. The children continued to reside with Mother for several months before a series of troubling incidents occurred. In February 2018, Mother was charged with another OVI after flipping her vehicle in an automobile accident. In March 2018, the police responded to her residence twice on the same day due to domestic disputes between her and her husband and her and S.H. In April 2018, Mother was

placed on a 72-hour hold at a local hospital after she exhibited erratic behavior. Prompted by the foregoing incidents, Father returned to Ohio and filed a motion to reallocate parental rights and responsibilities. Following the filing of his motion, Mother was also arrested for driving while under OVI suspension.

{¶5} The court set the matter for hearing on Father's motion to reallocate and, in the interim, both parties continued to enjoy companionship time with the children. Mother, through counsel, served Father with discovery requests but received untimely and incomplete responses to her requests. As the hearing date neared, she filed a motion to compel him to respond and to sanction him for noncompliance with the court's discovery orders. Though the court granted Mother's motion to compel, Father moved to dismiss his pending motions without providing further discovery. As a result of his voluntary dismissal, the court terminated its temporary orders in September 2018, and the parties continued to operate under the terms of their shared parenting plan.

{¶6} In November 2018, Mother was arrested and charged with resisting arrest, disorderly conduct, and child endangering related to S.H. and his half-siblings. During the incident, Mother was intoxicated and locked S.H. out of her house when he tried to dispose of her alcohol. She was briefly ordered not to have contact with S.H. and ultimately convicted of all but the child endangering charges. As a result of the incident, Father filed another motion to reallocate parental rights and responsibilities.

{¶7} Although Father filed his second motion to reallocate in November 2018, the trial on his motion did not occur until March 2020. The parties continued to share custody for the duration of 2018 and the start of 2019 but, beginning in May 2019, another series of troubling incidents occurred. In May 2019, the police were called to Mother's residence due to a fight

between her and S.H. In June 2019, a female acquaintance of Mother's was arrested for selling methamphetamine out of a vehicle belonging to Mother's husband. Initially unbeknownst to Father or the court, Mother and her husband then took two business trips and left the children in the female's care while she was awaiting sentencing on her drug charge. In September 2019, the police responded to Mother's calls on three separate dates regarding S.H. The last call resulted in S.H. receiving an unruly charge and being placed in Father's temporary custody. Two months later, after learning that Mother had left the children with her female acquaintance, the court likewise placed G.H. in Father's temporary custody. Thereafter, the children remained in Father's temporary custody, and Mother was afforded visitation.

{¶8} Mother initially chose to proceed pro se when Father filed his second motion to reallocate parental rights and responsibilities. She served Father with discovery requests and issued numerous subpoenas to obtain information related to his employment records. Father moved to quash the subpoenas and to obtain a protective order, however, noting that Mother previously had posted private information related to his career in law enforcement on social media. The court agreed to quash the subpoenas and ordered that any future subpoenas requesting sensitive information instruct the recipient to deliver the requested materials directly to the court for in camera inspection. Mother then reissued her subpoenas and commanded the recipients to submit the requested materials to the court.

{¶9} Father responded to Mother's discovery requests but objected to many of her interrogatories and requests for production. Mother moved the court to compel Father to engage in meaningful discovery, but Father filed another motion for a protective order. Upon review, the court overruled Mother's motion to compel. It also later quashed her subpoenas for Father's employment records.

{¶10} The trial court initially set the matter for trial in January 2020. Mother objected on the basis that she had not been provided proper discovery, but the court overruled her objection. Meanwhile, Father moved the court to deem as admitted the requests for admissions he had served upon Mother, as she had failed to respond within the requisite period. Mother did not respond to Father's motion and, subsequently, the court granted the motion and deemed as admitted the admissions Father had served upon her. The day before the scheduled trial, Father then moved to exclude any witnesses or exhibits Mother might seek to present at trial, as she had not filed a pretrial statement and had not stipulated to any of the exhibits. Later that same day, an attorney filed a notice of appearance on behalf of Mother and requested a continuance.

{¶11} At the request of Mother's new counsel, the trial court continued the trial on Father's motion to reallocate until March 2020. Although the court scheduled the matter for mediation in early February, Mother did not attend the mediation due to a work-related matter. Her attorney then withdrew from representation shortly thereafter and, one business day before the scheduled trial date, Mother moved for another continuance.

{¶12} On the morning of trial, Father filed a brief in opposition to Mother's motion for a continuance and renewed his motion to exclude any evidence or witnesses she might present because she once again had not filed a pretrial statement. The court heard arguments from both parties and denied Mother's request for a continuance. Rather than immediately rule on Father's motion to exclude, the court indicated that it would briefly recess to give the parties an opportunity to consult and determine whether they could reach an agreement or stipulate to any of the evidence and exhibits. As soon as the judge left the bench, however, Mother left the courthouse and did not return. The trial proceeded in her absence, and, at its conclusion, the court indicated that it would be awarding legal custody of S.H. and G.H. to Father.

{¶13} The court issued a journal entry wherein it indicated that Father's motion to reallocate parental rights and responsibilities was sustained. Mother appealed from that entry, but this Court dismissed her appeal. This Court determined that the trial court had not issued a final, appealable order. Specifically, we determined that the court's entry did not sufficiently determine the matter, grant legal custody, or otherwise set forth any reallocation of parental rights. *See In re S.H. and G.H.*, 9th Dist. Summit No. 29725 (June 22, 2020).

{¶14} Following the dismissal of Mother's appeal, she filed a motion for new trial and a motion for reasonable visitation in the lower court. The trial court took her motions under advisement and ordered the guardian ad litem to file an updated report. The court ultimately held a hearing on Mother's motions and, following the hearing, denied her request for a new trial. The court then issued a judgment entry, ordering S.H. and G.H. to be placed in Father's legal custody.

{¶15} Mother now appeals from the court's judgment in favor of Father and raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT COMMITTED PLAIN ERROR PREJUDICIAL TO [MOTHER] REQUIRING [MOTHER] TO COMMENCE THE TRIAL AFTER IMPROVIDENTLY EXTINGUISHING MOTHER'S RIGHT TO DISCOVERY, THUS PREVENTING A FAIR TRIAL. THIS WAS A VIOLATION OF MOTHER'S DUE PROCESS RIGHTS OF THE FOURTEENTH AMENDMENT, OF THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.**

{¶16} In her first assignment of error, Mother argues that the trial court committed plain error and violated her due process rights when it held a trial on Father's second motion to

reallocate without ensuring that she was afforded proper discovery. For the following reasons, we reject her assignment of error.

{¶17} Initially, we note that Mother is representing herself on appeal and likewise appeared pro se for the trial on Father's second motion to reallocate. This Court has recognized that

> pro se litigant[s] should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that [s]he remains subject to the same rules and procedures to which represented litigants are bound. [Sh]e is not given greater rights than represented parties, and must bear the consequences of h[er] mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

(Alterations sic.) *Regions Bank v. Sabatino*, 9th Dist. Summit No. 25907, 2012-Ohio-4254, ¶ 8, quoting *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3. With that in mind, we turn to Mother's argument.

{¶18} "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Cubbal v. Charek*, 9th Dist. Medina Nos. 18CA0097-M, 20CA0038-M, 2021-Ohio-1909, ¶ 23, citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). "What process is due depends on considerations of fundamental fairness in a particular situation." *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, ¶ 28. "[D]ue process remains 'a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur.'" *In re T.B.*, 9th Dist. Summit Nos. 29560, 29564, 2020-Ohio-4040, ¶ 34, quoting *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 22.

{¶19} Mother argues that she was denied due process because she was forced to go to trial without discovery. She notes that the trial court failed to compel Father to respond to her

discovery requests and quashed subpoenas that she issued to obtain information related to his employment. According to Mother, "the trial court facilitated [Father's] lack of disclosures of any kind and provided him the vehicle in which to ambush [her] at trial." She argues that the trial court showed bias against her by encouraging Father to abuse the discovery process. Mother asks this Court to vacate the custody award in favor of Father and remand this matter for a new trial "where discovery may be had * * *."

{¶20} Notably, Mother has not assigned as error that the trial court abused its discretion by denying her motion to compel or by granting Father's motion to quash several of her subpoenas. Her assignment of error concerns the court's decision to begin the trial at a time when, according to Mother, she had not received "a scintilla of information regarding the most basic elements of the case that Father intended to present * * *." This Court has repeatedly noted that "'[a]n appellant's captioned assignment of error 'provides this Court with a roadmap on appeal and directs this Court's analysis.'"" *U.S. Bank Trust, N.A. v. Antoine*, 9th Dist. Summit No. 28990, 2019-Ohio-3868, ¶ 15, quoting *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 41, quoting *State v. Marzolf*, 9th Dist. Summit No. 24459, 2009-Ohio-3001, ¶ 16. Because Mother has not challenged individual discovery rulings that the trial court made, this Court will not review the trial court's individual rulings. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). We limit our review to Mother's argument that she was forced to go to trial without discovery.

{¶21} As previously noted, the trial court initially scheduled the trial on Father's second motion to reallocate for January 2020. Before that date, Mother received discovery responses from Father, subpoenaed records from Child Guidance & Family Solutions, and subpoenaed

records from the children's schools. Although the court quashed other subpoenas that Mother issued, those subpoenas only related to Father's work records. The court conducted in camera interviews with S.H. and G.H. at Mother's request, and the guardian ad litem filed extensive reports in advance of the trial. Further, Father filed both a pretrial statement and a list of his exhibits several days before the trial. Mother, meanwhile, did not respond to Father's discovery requests, did not file a pretrial statement or a list of exhibits, and did not stipulate to the authenticity of any of the records Father sought to introduce. She hired counsel on the eve of trial and moved for a continuance less than twenty-four hours before the trial was set to commence. On review of her request, the court granted her motion and continued the trial for almost three months.

{¶22} Mother also failed to file a pretrial statement or a list of exhibits before the rescheduled trial date. She discharged her attorney roughly two weeks before trial but did not immediately request a continuance. Instead, she filed a motion for a continuance the Friday before the Monday trial date and orally renewed her motion on the morning of trial. While the trial court refused to continue the matter, it did give Mother an opportunity to meet privately with Father and his counsel before trial to see if any stipulations or agreements could be reached. Rather than pursue that opportunity, Mother left the courthouse.

{¶23} Upon review, we cannot conclude that the trial court violated Mother's due process rights when it went forward with the trial on Father's motion to reallocate. Mother was given notice of the trial, an opportunity to be heard on her requests for additional discovery, and a prior continuance. *See Cubbal*, 2021-Ohio-1909, at ¶ 23. Moreover, the record does not support her claim that she was not given "a scintilla of information" about Father's case and was subjected to trial by ambush. Mother was aware of what Father's entire trial strategy would be,

given that he filed a pretrial statement and a list of his exhibits before the court rescheduled the trial for an additional three months. She also was privy to the wealth of information contained in the record, including extensive reports filed by the guardian ad litem. Mother chose not to respond to Father's discovery requests, not to file a pretrial statement, and not to file an exhibit list. She also chose to leave the courtroom when the trial court afforded her an opportunity to meet with Father and try to reach an agreement or stipulate to the evidence or exhibits that would be introduced at the trial. The record does not support Mother's contention that the trial court showed favoritism toward Father or offended notions of fundamental fairness when it went forward with the trial. *See King v. Divoky*, 9th Dist. Summit No. 29769, 2021-Ohio-1712, ¶ 47-48 (defining judicial bias in the context of the Due Process Clause); *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, at ¶ 28. Accordingly, Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION, AND COMMITTED PLAIN ERROR AWARDING CUSTODY OF THE MINOR CHILDREN TO [FATHER] WITHOUT MAKING THE REQUIRED STATUTORY DETERMINATIONS, PURSUANT TO [R.C.] 3109.04(E)(1)(a)[.]**

{¶24} In her second assignment of error, Mother argues that the trial court erred when it awarded legal custody to Father without making the required statutory findings, including that a change in circumstances had occurred. We agree.

{¶25} "R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 26. The statute provides, in relevant part, that a court

> shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the

modification is necessary to serve the best interest of the child.  In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a)(iii).  It is well settled that a court cannot modify a prior decree allocating parental rights and responsibilities without finding that there has been a change of circumstances and that the modification is in the best interest of the child.  *Fisher* at ¶ 33-35; *In re M.T.*, 9th Dist. Wayne No. 11CA0026, 2012-Ohio-534, ¶ 7.

{¶26}  At the conclusion of the trial on Father's second motion to reallocate, the trial court made a ruling from the bench.  The court indicated that Father's request for a change in custody was "consistent, together with the addendum to the guardian ad litem's report, and more importantly, from [the court's] view with the best interest * * * of [S.H. and G.H.]"  The court did not specifically address any of the best interest factors.  *See* R.C. 3109.04(F)(1).  Nor did it address whether a change in circumstances had occurred.  *See* R.C. 3109.04(E)(1)(a).

{¶27}  Following the court's oral ruling, it issued a journal entry.  The entry also did not address the change of circumstances requirement or the best interest factors.  It only provided that Father's complaint and motion to reallocate was sustained.  Following Mother's attempted appeal of that entry, the trial court issued a second journal entry.  The second entry ordered that S.H. and G.H. be placed in Father's legal custody.  Once again, however, the entry did not address the change of circumstances requirement or the best interest factors.

{¶28}  Notably, when Mother answered Father's complaint and second motion to reallocate, she specifically argued that no change of circumstances had occurred and that a change was not necessary to serve the children's best interests.  She argued that she struggled with alcohol addiction, that everyone was aware of that fact when the court issued its most recent

decree, and that her continued "recovery and pitfalls associated therewith" did not amount to a change of circumstances. Further, when Mother filed a motion for new trial after her first attempted appeal, she also argued that the trial court's entry failed to address the change of circumstances requirement and the best interest factors outlined in R.C. 3109.04. Mother reiterated that her addiction struggles were well-known throughout the course of the litigation, that no change of circumstances had occurred, and that it was still in the children's best interest to have her be named legal custodian. As part of her requested relief, Mother specifically asked the trial court "to include findings of fact and conclusions of law, and to conform to statute(s), allowing for meaningful appellate review * * *."

{¶29} Upon review, we cannot conclude that the trial court correctly applied R.C. 3109.04(E)(1)(a) or (F)(1) when it modified its prior decree and awarded legal custody to Father. There is no indication in the record that the court considered the change of circumstances requirement before modifying its prior decree. The court did not explicitly refer to that requirement and did not include any factual findings in its ruling. *Compare Nigro v. Nigro*, 9th Dist. Lorain No. 04CA008461, 2004-Ohio-6270, ¶ 6. Moreover, the court neglected to analyze any of the best interest factors in either its oral or written decision. The litigation in this matter has been ongoing for years and has been highly contentious at numerous points. As a reviewing court, we are unable to determine in the first instance whether a change of circumstances sufficient to warrant a reallocation of parental rights and responsibilities occurred. *See Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 33-35; *In re M.T.*, 2012-Ohio-534, at ¶ 7. Further, we cannot conduct a meaningful review of the trial court's best interest determination when the record is devoid of any factual findings relevant to that determination. This Court takes no position on whether a change of circumstances occurred in this matter or whether a change in the

allocation of parental rights and responsibilities would be in the best interest of the children. On remand, the trial court must properly consider and apply R.C. 3109.04(E)(1)(a) and (F)(1) in the first instance. Mother's second assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR III

**REVIEWING, CHANGING, AND DETERMINING CHILD SUPPORT FOR THE SAKE OF MINOR CHILDREN IS FOUNDED IN OUR STATUTE. ERRORS OF LAW ARE REVIEWED DE NOVO.**

{¶30} In her third assignment of error, Mother argues that the trial court erred when it reallocated the parties' parental rights and responsibilities without addressing their requests to recalculate child support. Based on our resolution of Mother's second assignment of error, her third assignment of error is premature, and we decline to address it.

III.

{¶31} Mother's second assignment of error is sustained. Her first assignment of error is overruled, and her third assignment of error is premature. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR,

APPEARANCES:

DESSERAI I., pro se, Appellant.

MICHELLE L. TRASKA, Attorney at Law, for Appellee.