**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. West v. LaRose*, Slip Opinion No. 2020-Ohio-4380.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4380

THE STATE EX REL. WEST ET AL. *v.* LAROSE, SECY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. West v. LaRose*, Slip Opinion No. 2020-Ohio-4380.]**

*Elections—Mandamus—R.C. 3513.261—A nominating petition must include at least one originally signed statement of candidacy, which may be copied on the other petition papers for circulation—Statement of candidacy that is designated as the original must match the petitions circulated—Writ denied.*

(No. 2020-1044—Submitted September 4, 2020—Decided September 10, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Kanye West and Michelle Tidball, seek a writ of mandamus compelling respondent, Ohio Secretary of State Frank LaRose, to accept their statement of candidacy and nominating petition for president and vice president of the United States and to certify their names for

placement on the November 3, 2020 general-election ballot. The secretary of state rejected the nominating petition for noncompliance with R.C. 3513.261.

{¶ 2} We deny the writ. The nominating petition did not substantially comply with the requirements of R.C. 3513.261. The secretary of state therefore did not abuse his discretion or clearly disregard applicable law in rejecting it.

## I. Background

{¶ 3} West and Tidball are prospective independent candidates for president and vice president of the United States. On August 5, 2020, Matthew Aumann, the designated representative of West and Tidball's campaign in Ohio, filed with the secretary of state's office (1) a document containing West and Tidball's originally signed statement of candidacy, (2) a nominating petition that on its face contained a sufficient number of signatures to nominate West and Tidball as joint candidates for president and vice president, and (3) a slate of presidential electors pledged to West and Tidball.

{¶ 4} The nominating petition filed by Aumann consisted of approximately 1,400 part-petitions. With the part-petitions, Aumann filed only one "wet ink" original statement of candidacy that was signed by West and Tidball. Though each of the approximately 1,400 part-petitions included a copy of a statement of candidacy with West's and Tidball's signatures, none of those is a copy of the original that Aumann filed.

{¶ 5} The secretary of state's office transmitted the nominating petition to the various county boards of elections for verification of signatures. Reports from the county boards of elections indicate that there are more than 5,000 valid signatures on the nominating petition, which is a sufficient number to qualify for the ballot. *See* R.C. 3513.257(A).

{¶ 6} On August 19, J. Corey Colombo, one of the attorneys representing intervening respondent Lewis Goldfarb in this action, sent an e-mail to the secretary of state's office concerning West and Tidball's nominating petition. The e-mail

stated that based on a review of documents he had obtained from the secretary of state's office, it appeared that the original nominating petition and statement of candidacy did not match the copies that were circulated with the part-petitions. Colombo suggested that this was a "fatal flaw" to the nominating petition and that the petition should not be certified. At the request of the secretary of state's chief legal counsel, Colombo later provided a more detailed explanation of his position that the nominating petition was invalid, with citations to statutes and caselaw.

{¶ 7} On August 21, the secretary of state rejected West and Tidball's nominating petition. In the rejection letter to Aumann, Deputy Secretary of State Amanda Grandjean wrote: "Under Ohio law, a nominating petition must include at least one originally signed statement of candidacy, which may be copied on the other petition papers for circulation. The statement of candidacy that was designated as the original in [West and Tidball's] filing does not match the petitions circulated. In fact, the signatures for Michelle Tidball bear no resemblance, calling into question which is genuine." (Footnote omitted.) Accordingly, the secretary of state did not certify West and Tidball as candidates for the November 3 ballot.

{¶ 8} Following the secretary of state's rejection of the nominating petition, his office posted on its website a copy of the "original" version of the statement of candidacy and nominating petition that had been filed with the secretary of state alongside the "circulated version" that was attached to the part-petitions that had been filed:

West and Tidball have presented no evidence showing that they filed an original of the "circulated version" with the secretary of state as part of their nominating petition.

{¶ 9} None of the statements of candidacy attached to the part-petitions filed with the secretary of state is a copy of the original that was filed. Though Grandjean's August 21 rejection letter noted only the variance between Tidball's signatures, there are other differences showing that the "circulated version" was not a copy of the "original." Here are a few examples:

1. The dates of West's and Tidball's signatures on the original statements of candidacy are different from the dates on the circulated version. And Tidball's signature on the original is dated *after* the circulated version.

2. The information provided in Tidball's statement of candidacy is handwritten on the original but typewritten in the circulated version.

3. The original does not disclose the existence of a nominating committee, whereas the circulated version contains the names and addresses of five individuals purporting to be members of the nominating committee.

4. The "Nominating Petition" section of the form in the circulated version has West's and Tidball's names printed in the spaces to name the candidates, but the original does not.

{¶ 10} West and Tidball filed this action on August 26, seeking a writ of mandamus to compel the secretary of state to (1) accept their statement of candidacy and nominating petition as candidates for president and vice president of the United States and (2) certify their names for placement on the November 3 general-election ballot. This court set an expedited schedule for the secretary of state to answer and for the parties to file their evidence and briefs. 159 Ohio St.3d 1484, 2020-Ohio-4213, __ N.E.3d __. Goldfarb, who had filed a protest against West and Tidball's nominating petition with the secretary of state under R.C. 3513.263, filed a motion to intervene as a respondent, which this court granted. 159 Ohio St.3d 1491, 2020-Ohio-4273, __ N.E.3d __. The parties have submitted their evidence and the matter is fully briefed for our decision.

## II. Overview of Ballot-Access Statutes

{¶ 11} Several statutes in R.C. Chapter 3513 govern ballot access for prospective independent candidates for president and vice president of the United States. R.C. 3513.257 provides that prospective independent candidates for these offices must file with the secretary of state a joint statement of candidacy, together with a nominating petition, as one instrument. The nominating petition must have

at least 5,000 signatures of qualified electors. *See* R.C. 3513.257(A). And the statement of candidacy and nominating petition must comply with R.C. 3513.261. R.C. 3513.257.

{¶ 12} R.C. 3513.261 prescribes the form of the statement of candidacy and the nominating petition and the requirements for including the statement of candidacy on separate part-petitions. The portion of the statute at issue in this case provides:

> A nominating petition may consist of one or more separate petition papers, each of which shall be substantially in the form prescribed in this section. If the petition consists of more than one separate petition paper, the statement of candidacy of the candidate or joint candidates named need be signed by the candidate or joint candidates on only one of such separate petition papers, *but the statement of candidacy so signed shall be copied on each other separate petition paper before the signatures of electors are placed on it*.

(Emphasis added.) Thus, if the nominating petition consists of more than one petition paper, the statement of candidacy that appears on the separate petition papers *may* be a copy of the original statement of candidacy signed by the joint candidates. The "statement of candidacy so signed" language in R.C. 3513.261 contemplates that the statement of candidacy copied to the separate part-petitions is a copy of an original statement of candidacy that is filed with the secretary of state. *See State ex rel. Hawkins v. Cuyahoga Cty. Bd. of Elections*, 28 Ohio St.2d 4, 6, 274 N.E.2d 563 (1971), *superseded by statute on other grounds, State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 101 Ohio St.3d 63, 2004-Ohio-9, 800 N.E.2d 1162, ¶ 5-7.

{¶ 13} The statement of candidacy and nominating petition must be filed with the secretary of state by 4:00 p.m. on the 90th day before the election. R.C. 3513.257. The secretary of state must then transmit the various part-petitions to the county boards of elections to determine the validity of the electors' signatures. R.C. 3513.263. In addition, the secretary of state cannot accept any petition that violates the requirements of R.C. Chapter 3513 "or any other requirements established by law." R.C. 3501.39(A)(4).

### III. Analysis

{¶ 14} To be entitled to a writ of mandamus, West and Tidball must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) the secretary of state has a clear legal duty to provide it, and (3) West and Tidball do not have an adequate remedy in the ordinary course of law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13.

{¶ 15} As to the third element, West and Tidball lack an adequate remedy in the ordinary course of law due to the proximity of the election, which is less than 60 days away. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

{¶ 16} The remainder of the analysis requires this court to determine whether the secretary of state "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable law." *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. West and Tidball make much of the fact that Goldfarb's attorneys had "ex parte" communications with the secretary of state's office, advocating for the rejection of their nominating petition, and that the secretary of state rejected the petition for the same reason presented in those communications. But they do not argue that these communications constituted fraud or corruption on the part of the secretary of state. Nor have West and Tidball cited any authority for the proposition

that the communications were improper. Therefore, "the dispositive issue is whether [the secretary] abused his discretion or clearly disregarded applicable law." *Linnabary* at ¶ 14.

### A. Authenticity of Tidball's Signature

{¶ 17} West and Tidball's first argument focuses on the authenticity of Tidball's signatures on the statements of candidacy that were filed with the secretary of state. Citing the rejection letter from Deputy Secretary of State Grandjean, West and Tidball argue that "the entire basis for the rejection" of their nominating petition "is that the Office of the Secretary of State simply 'questioned' which of two signatures purportedly that of [Tidball] was her genuine signature." Tidball, however, avers under oath in the verified complaint that the signatures on both the original statement of candidacy and on the copies circulated with the separate part-petitions are hers. West and Tidball therefore argue that the secretary of state abused his discretion and disregarded applicable law in invalidating their petition. In support of this argument, they rely on a line of cases in which this court granted writs of mandamus ordering boards of elections to add candidates to the ballot, finding that the boards should have counted previously invalidated signatures that were proved to be genuine by uncontroverted evidence. *See State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 144 Ohio St.3d 346, 2015-Ohio-4097, 43 N.E.3d 406; *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697; *Georgetown v. Brown Cty. Bd. of Elections*, 158 Ohio St.3d 4, 2019-Ohio-3915, 139 N.E.3d 852; *State ex rel. Burroughs v. Summit Cty. Bd. of Elections*, 145 Ohio St.3d 220, 2015-Ohio-4122, 48 N.E.3d 515.

{¶ 18} West and Tidball's argument is without merit because it misstates the secretary of state's legal basis for rejecting their petition. The secretary of state rejected the nominating petition because West and Tidball's original statement of candidacy did not match the copies of the statement of candidacy that were

circulated with the various part-petitions. According to the secretary of state, this mismatch between the original statement of candidacy and the copies circulated with the part-petitions rendered the nominating petition deficient under R.C. 3513.261. The rejection letter cited the dissimilar signatures of Tidball on the two versions as one example of how the circulated version of the statement of candidacy did not match the original.

{¶ 19} In other words, even if Tidball's signature is genuine on her original statement of candidacy *and* on the copies circulated with the part-petitions, that fact does not entitle West and Tidball to relief in mandamus. The reason the secretary of state rejected the petition is that West and Tidball did not file the original statement of candidacy that was copied to the approximately 1,400 part-petitions that were filed as part of the nominating petition. And a comparison of the originally signed statement of candidacy and the "circulated version" reveals multiple differences, in addition to the apparent mismatch of Tidball's signatures, showing that the "circulated version" is not a copy of the "original."

{¶ 20} Accordingly, the argument that Tidball's signature is genuine on both the original filed with the secretary of state and the copies that were circulated with the part-petitions is a red herring. West's and Tidball's entitlement to relief depends on whether their petition complies with R.C. 3513.261, notwithstanding the fact that the copies of the statement of candidacy circulated with their part-petitions were copied from an original that was not filed with the secretary of state as part of the nominating petition.

### B. Strict or Substantial Compliance with R.C. 3513.261

{¶ 21} The parties disagree over the standard of compliance with R.C. 3513.261 that should guide this court's review. West and Tidball contend that only "substantial compliance" is required, while the secretary of state argues that strict compliance is the applicable standard in this case. Intervening respondent Goldfarb does not take a position on whether substantial compliance or strict compliance

with R.C. 3513.261 is required. Goldfarb argues that even assuming the substantial-compliance standard applies, the nominating petition failed to satisfy it.

{¶ 22} We need not resolve the issue whether substantial compliance or strict compliance applies in this case. Even if substantial compliance is the standard, West and Tidball did not substantially comply with R.C. 3513.261's requirement that they file the original statement of candidacy that was copied to the part-petitions they filed. *See State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 100 Ohio St.3d 214, 2003-Ohio-5643, 797 N.E.2d 1254 ¶ 10 (finding that a candidate "failed to substantially comply" with R.C. 3513.261 when he did not file at least one originally signed statement of candidacy), *superseded by statute on other grounds*, *Rust*, 101 Ohio St.3d 63, 2004-Ohio-9, 800 N.E.2d 1162, at ¶ 5-7.

C. *The Nominating Petition Did Not Comply with R.C. 3513.261*

{¶ 23} When a nominating petition consists of more than one part-petition, R.C. 3513.261 permits a candidate or joint candidates to sign only one statement of candidacy and then copy that statement of candidacy on the other part-petitions before any signatures are placed on them. *See* R.C. 3513.261. Alternatively, a candidate (or joint candidates) may separately sign an original statement of candidacy that is at the head of each petition paper that is circulated. *State ex rel. Ferguson v. Brown*, 173 Ohio St. 317, 319-320, 181 N.E.2d 890 (1962), *overruled in part on other grounds, State ex rel. Saffold v. Timmins*, 22 Ohio St.2d 63, 258 N.E.2d 112 (1970); *see also Hawkins*, 28 Ohio St.2d at 5-6, 274 N.E.2d 563.

{¶ 24} West and Tidball argue that they complied with R.C. 3513.261 because they (1) filed an original statement of their joint candidacy and (2) also filed copies of a statement of candidacy with their part-petitions that were, in fact, copies of an original that both candidates signed. They do not dispute, however, that the copies of the statement of candidacy that were circulated with the part-petitions are *not* copies of the original statement of candidacy that they filed with the secretary of state. Nonetheless, they argue that they complied with the statute

10

because the copies of the statement of candidacy attached to the part-petitions are, in fact, copies of *another* original that West and Tidball had signed, but had not filed with their nominating petition. This scenario, however, does not substantially comply with R.C. 3513.261.

{¶ 25} R.C. 3513.261 says that a statement of candidacy "need be signed by the candidate or joint candidates on only one of such separate petition papers, but the statement of candidacy *so signed* shall be copied on each other separate petition paper before the signatures of electors are placed on it." (Emphasis added.) This language contemplates that the statement of candidacy copied to the separate part-petitions is a copy of an original statement of candidacy that is filed with the secretary of state. Thus, in *Hawkins*, this court denied mandamus relief to a candidate who filed copies of an originally signed statement of candidacy but failed to file the actual original that had been copied. *Id*. at 4-6.

{¶ 26} West and Tidball, however, urge that this court's decisions in *State ex rel. Osborn v. Fairfield Cty. Bd. of Elections*, 65 Ohio St.3d 194, 602 N.E.2d 636 (1992), *State ex rel. Beck v. Casey*, 51 Ohio St.3d 79, 554 N.E.2d 1284 (1990), and *Saffold*, 22 Ohio St.2d 63, 258 N.E.2d 112, support the view that their nominating petition complies with R.C. 3513.261. In each of those cases, this court granted a writ of mandamus ordering that the relator's name be placed on the ballot, notwithstanding the fact that the original statement or declaration of candidacy was not identical to all of the statements or declarations of candidacy attached to the part-petitions. *Osborn* at 196-197; *Beck* at 80-81; *Saffold* at 64. Those cases, however, do not dictate the result that West and Tidball seek here.

{¶ 27} *Saffold* and *Osborn* are readily distinguishable. In *Saffold*, the statements of candidacy were identical, except that the candidate signed some of them before one notary and others before a different notary before circulating the petition. *Saffold* at 63. And in *Osborn*, the statements of candidacy at issue were identical on each part-petition, except that in some of them, the candidate's house-

of-representatives district was corrected by scratching out the incorrect district number while others had a whited-out alteration of the district number. *Osborn* at 195. This court found that these variances in the statements of candidacy filed with the petitions were "technical defects" that did not affect the candidates' substantial compliance with the statute. *Saffold* at 63-64; *Osborn* at 196. In contrast, the defect in this case is not merely a technical one: it goes to the very heart of the requirement that the originally signed statement of candidacy be filed along with the copies of it that were circulated with the part-petitions.

{¶ 28} Finally, West and Tidball's reliance on *Beck* is also misplaced. In *Beck*, this court decided the validity of a nominating petition filed under R.C. 3513.09, which contains language similar to that in R.C. 3513.261.[1] The candidate in *Beck* filed three separate declaration-of-candidacy forms with three different petition papers: he signed one of the forms on February 7 and the other two on February 20. The board of elections invalidated the petition because it believed only a single declaration of candidacy was permitted. *Beck* at 80. This court rejected that interpretation because R.C. 3513.09 (like R.C. 3513.261) states only that one declaration "need be" signed, thereby implying "that others may be," *id.* at 81. The copying of a declaration of candidacy is therefore permissive, not mandatory. This court's decision was consistent with the secretary of state's position. Appearing as an amicus curiae in *Beck*, the secretary of state argued that a candidate does not violate the statute by completing another declaration of

---

1. Like R.C. 3513.261, R.C. 3513.09 provides:

> If the petition * * * to be filed with the declaration of candidacy, consists of more than one separate petition paper, the declaration of candidacy of the candidate named need be signed by the candidate * * * on only one of such separate petition papers, but the declaration of candidacy so signed shall be copied on each other separate petition paper before the signature[s] of electors are placed on it.

candidacy on a different day if, for example, "he ran out of copies or original declarations." *Id.*

{¶ 29} West and Tidball argue that the secretary of state's rejection of their nominating petition is inconsistent with this court's holding and the secretary of state's position in *Beck*. But there is a fundamental distinction between the factual scenario in *Beck* and what occurred in this case.

{¶ 30} In *Beck*, 51 Ohio St.3d 79, 554 N.E.2d 1284, the candidate signed three declarations of candidacy, all of which were filed with the board of elections. There was no assertion in *Beck* that the candidate had filed copies of a declaration of candidacy without also filing the original. Although in *Beck* this court allowed for the possibility that multiple declarations of candidacy could be signed, *Beck* does not stand for the proposition that *copies* of such declarations attached to separate part-petitions are valid when the original from which they were copied is not filed with the petition papers.

{¶ 31} Requiring a candidate who files copies of a signed statement of candidacy to also file the original statement of candidacy "so signed" is consistent with the statutory language in R.C. 3513.261. West and Tidball did not comply with this requirement and have therefore failed to demonstrate their substantial compliance with the statute.

{¶ 32} For these reasons, the secretary of state did not abuse his discretion or clearly disregard applicable law when he rejected the nominating petition. We therefore deny the writ.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relators.

Dave Yost, Attorney General, and Bridget C. Coontz and Halli Brownfield Watson, Assistant Attorneys General, for respondent.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for intervening respondent.

_____