[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Maras v. LaRose*, **Slip Opinion No. 2022-Ohio-866.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-866

THE STATE EX REL. MARAS *v*. LAROSE.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Maras v. LaRose*, **Slip Opinion No. 2022-Ohio-866.]**

*Elections—Mandamus—Election laws are mandatory and require strict compliance—Substantial compliance is acceptable only when an election provision expressly states that it is—Writ denied.*

(No. 2022-0187—Submitted March 14, 2022—Decided March 18, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Terpsehore P. Maras, circulated petitions to appear on the May 2022 Republican Party primary ballot as a candidate for secretary of state. When the secretary of state's office forwarded the part-petitions to the various county boards of elections for signature verification, most of the county boards did not receive an accompanying declaration of candidacy. Based on guidance from

the secretary of state's office, many of the county boards invalidated the entire part-petitions due to the absence of a declaration. As a result, the county boards did not validate enough petition signatures for Maras to qualify as a candidate on the ballot; therefore, the secretary of state's office refused to certify her name as a candidate on the ballot.

{¶ 2} In this expedited election case, Maras seeks a writ of mandamus compelling respondent, Ohio Secretary of State Frank LaRose, to send her declaration of candidacy to the county boards for them to conduct a new signature verification. In addition, she seeks a writ compelling Secretary LaRose to certify her name for placement on the May 2022 ballot.

{¶ 3} For the reasons set forth herein, we deny the writ.

## I. BACKGROUND

### A. *Summary of the issue*

{¶ 4} A candidate for party nomination to a state-wide office must file a declaration of candidacy with the secretary of state's office. R.C. 3513.04. At the same time that the candidate files the declaration, she must also file all separate petition papers "as one instrument." R.C. 3513.05. And the Revised Code requires that each part-petition include a copy of the candidate's declaration.

> If the petition * * * consists of more than one separate petition paper, the declaration of candidacy of the candidate named need be signed by the candidate * * * on only one of such separate petition papers, but the declaration of candidacy so signed shall be copied on each other separate petition paper before the signature[s] of electors are placed on it.

R.C. 3513.09. The issue in this case is whether Maras complied with R.C. 3513.09.

*B. Maras's evidence*

{¶ 5} Maras signed a declaration of candidacy for the Republican Party nomination to run for secretary of state. On January 31, 2022, she (or her campaign, on her behalf) submitted her declarations and signed part-petitions to the secretary of state's office. When she did, she separated the declaration pages from the signature pages, organizing the papers into 69 "batches" of documents. The first batch contained all the declarations of candidacy. The remaining 68 batches included only the signature pages, grouped by county. Maras argues in her merit brief that she "collated" the documents and separated them by county in order to "ease the process" for the secretary of state's office and "increase their efficiency."

{¶ 6} On February 11, 2022, Amanda Grandjean,[1] on behalf of the secretary of state's office, sent an email to the county boards in response to requests "for guidance when a candidate omits a declaration of candidacy from a form used for gathering signatures." Citing R.C. 3513.09 and *State ex rel. Wilson v. Hisrich*, 69 Ohio St.3d 13, 16, 630 N.E.2d 319 (1994), Grandjean instructed the county boards that part-petitions must include a copy of the candidate's declaration.

{¶ 7} On February 16, Secretary LaRose issued Directive 2022-24, announcing the state-wide candidates who had been certified to the May primary-election ballot. Maras's name was not on that list. On that same date, Grandjean wrote a letter to Maras to inform her that her candidacy was not certified "due to the petition's invalidity." According to Grandjean, Maras failed to copy her declaration onto the part-petitions, as required by R.C. 3513.09. She informed Maras that while Ohio requires 1,000 valid petition signatures for a person to qualify as a secretary-of-state candidate, the county boards had validated only 556 signatures for Maras's candidacy.

---

1. Grandjean is the deputy assistant secretary of state and state elections director in the Ohio Secretary of State's Office, Elections Division.

{¶ 8} Maras disputes the claim that she circulated part-petitions without the required declaration. She claims that she filed "an original Declaration of Candidacy with [her] wet ink signature, along with sufficient copies of the Declarations of Candidacy with each page two signature pages and circulators statements." As evidence, she attached to her complaint affidavits from her petition circulators attesting that the petitions, when circulated, consisted of "a page one declaration of candidacy with each page two signature page and circulators statement."

### C. Secretary LaRose's evidence

{¶ 9} The secretary of state's office has promulgated Form No. 2-B, a two-sided form for candidates. The front of the form consists of the declaration of candidacy, the petition for the candidate, and a numbered table for collecting signatures. The back of the form contains additional signature blocks and a space for the circulator's statement and signature. Maras did not use Form No. 2-B for her part-petitions.

{¶ 10} According to Greg Fedak, the technical elections administrator with the Ohio Secretary of State's Office, Elections Division, Maras submitted her part-petitions on a form "apparently of her own devising." The part-petition form she created ("the Maras part-petition form") contains the header "Terpsehore P. Maras (TORE)—Petition for Ohio Secretary of State" and a table for signatures. It does not contain a declaration of candidacy. Maras submitted this form in different combinations with portions of Form No. 2-B and her declaration.

{¶ 11} Maras submitted part-petitions from a total of 68 counties. With respect to Adams County, Maras submitted a single page of petition signatures on the Maras part-petition form. She also submitted only the front page of Form No. 2-B, containing her original ink-signature declaration. That form contained no petition signatures. The secretary of state's office deemed that declaration page to be part of the Adams County petition because Adams County is first alphabetically.

Therefore, the Adams County part-petition, with the declaration, were sent to the county board for signature verification.

{¶ 12} Maras submitted to Cuyahoga County and Lake County a different version of Form No. 2-B, one that included a declaration of candidacy but not the numbered table for signatures. She had submitted petition signatures on the Maras part-petition form. The Cuyahoga County and Lake County Boards of Elections received declarations along with the part-petitions.

{¶ 13} For the remaining 65 counties, Maras submitted signatures only on the Maras part-petition form without any portion of Form No. 2-B. Those 65 county boards therefore received part-petitions without a declaration of candidacy.

{¶ 14} Approximately 40 county boards contacted the secretary of state's office for guidance on how to handle part-petitions lacking a declaration. In response, Grandjean sent the email instructing the county boards that part-petitions must include the candidate's declaration. Ultimately, some county boards validated signatures on Maras's part-petitions that lacked a signed declaration of candidacy while other county boards either disqualified the petitions in the first instance or amended their prior certifications to reflect zero valid signatures after receiving Grandjean's email. Collectively, the county boards certified only 556 valid signatures.

{¶ 15} According to Fedak, on February 15, a representative from Maras's campaign asked to speak to Fedak in person regarding the invalidated signatures on Maras's part-petitions. Maras's representative stated that she had "supplied the Secretary of State's Office with a set of signed declarations of candidacy and believed [the secretary of state's office] would copy the declarations and attach them to the part-petitions for each county." According to a summary of the meeting that was prepared by Deputy Elections Counsel Brian D. Malachowsky, who had also been present during the discussion, Maras's representative "twice confirmed that the supplied declarations of candidacy were not attached to any part-petitions

with signatures but acted under the belief that [the secretary of state's office] would attach them."

{¶ 16} The next day, Maras's campaign manager faxed to one or more county boards a copy of Maras's declaration of candidacy and asked the recipient county boards to certify the petition signatures based on the declaration that was being faxed along with the letter.

## II. PROCEDURAL HISTORY

{¶ 17} Maras filed a complaint for a writ of mandamus in this court on February 18, 2022. Pursuant to the expedited schedule set forth in S.Ct.Prac.R. 12.08(A)(2), the parties have submitted their evidence. Maras filed a merit brief that proffered four propositions of law, which are discussed out of order below. Secretary LaRose filed a merit brief and Maras filed a reply brief.

## III. LEGAL ANALYSIS

### A. Standard of review

{¶ 18} To be entitled to a writ of mandamus, Maras must establish by clear and convincing evidence that (1) she has a clear legal right to the requested relief, (2) Secretary LaRose has a clear legal duty to provide it, and (3) Maras does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. As to the third element, Maras lacks an adequate remedy in the ordinary course of the law due to the proximity of the primary election, which is less than 60 days away. *See State ex rel. West v. LaRose*, 161 Ohio St.3d 192, 2020-Ohio-4380, 161 N.E.3d 631, ¶ 15. The remainder of the analysis turns on whether Secretary LaRose "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable law." *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9.

*B. Maras is not entitled to a writ certifying her name to the ballot*

{¶ 19} As a preliminary matter, Maras's request for a writ of mandamus certifying her name to the ballot is, at best, premature. If she were to prevail on the merits of her claim, her petitions would be returned to the county boards for signature verification, and it is unknown whether that would produce enough valid signatures to qualify her name for candidacy on the ballot.

*C. Maras is not entitled to a writ returning the petitions to the county boards for signature verification*

**1. Maras did not comply with the requirements of R.C. 3513.09**

{¶ 20} As to Maras's demand for a writ returning the petitions to the county boards for signature verification, our decision in *Wilson*, 69 Ohio St.3d 13, 630 N.E.2d 319, is dispositive. In *Wilson*, the prospective candidate submitted a single declaration of candidacy and petition paper, "attaching to it three additional petition papers that did not contain a declaration of candidacy." *Id.* at 15. Wilson argued that all four petition pages should be considered a "single, 'separate petition paper' under R.C. 3513.09." *Id.* We rejected that argument because the statute plainly requires a declaration and a petition on each form (although the declaration need not be an original).

{¶ 21} In a move with parallels to this case, Wilson provided affidavits to the board of elections from all the petition signers attesting that the declaration was a part of the petition paper that they had signed. This court declined to consider the affidavits because R.C. 3513.05 and 3501.38(K) require a declaration of candidacy and separate petition papers to be filed at the same time. A candidate may not supplement a filing with additional signatures because "the later filing of the supplementary affidavits would also violate the single-filing, single-instrument requirements of R.C. 3513.05 and 3501.38(K)." *Id.* at 17.

{¶ 22} R.C. 3513.09 is unambiguous: if a petition consists of more than one part-petition, then the declaration of candidacy "shall be copied on each other

separate petition paper before the signature[s] of electors are placed on it." Plainly, Maras did not comply with this requirement: the declaration was not "copied on" the Maras part-petition forms before *or* after the signatures were affixed.

{¶ 23} Maras suggests in her second and third propositions of law that she substantially complied with Ohio law because her petition circulators used the declaration when collecting signatures, thereby eliminating any concerns about voter confusion. However, it is well-settled that "election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49. In *Wilson*, we held that R.C. 3513.09's mandate that the declaration appear on each part-petition is "a clear requirement" that must be strictly complied with. *Wilson*, 69 Ohio St.3d at 16, 630 N.E.2d 319.

{¶ 24} The strict application of R.C. 3513.09 renders most of Maras's arguments moot. Specifically, Maras devotes most of her merit brief to her contention that the affidavits of her petition circulators cure any objection to the petitions, and therefore should be considered. Secretary LaRose, citing *Wilson*, responds that the affidavits are an untimely supplement to the original filing. Maras in turn distinguishes *Wilson* on the ground that she is not offering the affidavits to supplement her filing; rather, she contends they are presented to this court to prove a fact in dispute, namely, what she filed with the board.

{¶ 25} We need not resolve this dispute because the affidavits do not change the analysis. The affidavits all contain the same sentence: "Th[e] complete candidate petition [I circulated] included a page one declaration of candidacy with each page two signature page and circulators statement." But these statements do not prove that all 68 declaration pages were turned in to the secretary of state's office after Maras separated them. The only evidence on *that* point is Maras's

affidavit statement that she submitted "sufficient" copies of her declaration to the secretary.

{¶ 26} It is unclear what Maras deems a "sufficient" number of copies and what form those copies took. In Maras's reply brief, she refers to the execution of a single declaration form "with an original wet ink signature," and avers that "[t]he law required the Secretary of State's office to transmit [her] part petitions by accompanying all part petitions with a (singular) declaration of candidacy that [she] filed with the Secretary of State during the intake process." The word "singular" appears in her brief and appears to corroborate the version of events described by Fedak, i.e., that Maras had provided only a few copies of the declaration and had expected the secretary of state's office to make copies of the declaration and attach them to the part-petitions for each county.

{¶ 27} As previously noted, Maras bears the burden of proof by clear and convincing evidence. *See, e.g.*, *State ex rel. Lorain Cty. Democratic Party Executive Commt. v. Larose*, 164 Ohio St.3d 451, 2021-Ohio-1144, 173 N.E.3d 478, ¶ 21 (mandamus denied in expedited election case because relators failed to meet their burden of proof by clear and convincing evidence). The affidavits from Maras and her circulators do not constitute clear and convincing evidence that she submitted 68 declarations, much less that the 68 declarations were in the proper form (that is, copied into the part-petitions themselves).

**2. Maras's propositions of law do not necessitate a different conclusion**

{¶ 28} Maras's first three propositions of law do not address the root of the problem: her failure to prove that she strictly complied with R.C. 3513.09. And if it is true that Maras separated the declarations from the part-petitions before filing them, she only compounded the problem by doing so. We reject the first three propositions of law.

{¶ 29} Maras's fourth proposition of law states, "The Court should not defer to the Secretary of State on a factual dispute when the evidence shows that they

[sic] did not follow the law or their own rules." This proposition of law is based on a false premise. In *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, we explained that "[w]hen reviewing a factual determination in this context, we will not substitute our judgment for that of the secretary of state or board of elections when there is conflicting evidence on the issue." *Id.* at ¶ 19.[2] Citing *Simonetti*, Maras urges this court not to defer to Secretary LaRose's version of the facts due to his alleged failure to follow the law. But we are not "deferring" to findings of fact made by the secretary. Rather, we are denying the writ because Maras's own version of the facts demonstrates noncompliance with the statute.

## IV. CONCLUSION

{¶ 30} Maras has failed to prove by clear and convincing evidence that her part-petitions met the requirements of R.C. 3513.09. And her reasons to excuse her noncompliance rest on incorrect statements of law. We therefore deny the writ of mandamus.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

———————————

Pullins Law Firm, L.L.C., and Scott A. Pullins, for relator.

Dave Yost, Attorney General, and Ann Yackshaw and Allison Daniel, Assistant Attorneys General, for respondent.

———————————

---

2. The "context" was a dispute over whether a candidate had signed the statement of candidacy on the part-petition before or after electors began signing it.