[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. King v. Cuyahoga Cty. Bd. of Elections*, Slip Opinion No. 2022-Ohio-3613.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3613

THE STATE EX REL. KING, MAYOR, *v*. CUYAHOGA COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. King v. Cuyahoga Cty. Bd. of Elections*, Slip Opinion No. 2022-Ohio-3613.]

*Mandamus—Writ sought to compel board of election to remove a recall election from the ballot—East Cleveland City Charter—Mandamus is proper when relator seeks to compel board of elections to perform an affirmative act—Laches—Board of elections has no authority under city's charter to assess the validity of a recall election—Motion to intervene denied—Writ denied.*

(No. 2022-1128—Submitted October 5, 2022—Decided October 11, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} In this expedited election case, relator, Brandon L. King, mayor of East Cleveland, seeks a writ of mandamus to compel respondent, the Cuyahoga County Board of Elections, to remove a recall election against him from the November 8, 2022 ballot. On October 3, 2022, Darryl Moore filed a motion for leave to intervene. For the reasons set forth herein, we deny the motion for leave to intervene and deny the writ of mandamus.

## II. ANALYSIS

### A. Statutory provisions governing recall petitions

{¶ 2} East Cleveland's city charter establishes procedures for a recall against a municipal officeholder. The charter requires the clerk of the city council to keep a supply of blank recall petition forms on hand. East Cleveland City Charter, Section 50. The clerk must issue blank forms upon receipt of an affidavit "stating the name of the member or members of the Council whose removal is sought."[1] *Id*. From the time the affidavit is filed, the petition circulators have 30 days to gather signatures and file the part-petitions with the clerk. *Id.*, Section 52.

{¶ 3} The recall process is formally initiated by the filing of the petition, signed by a sufficient number of electors, with the clerk. *Id.*, Section 49. The clerk must then "certify * * * whether the signature of electors [on the petition] amount in number to at least twenty-five (25) percent of the voters voting at the last regular municipal election of officers." *Id.*, Section 53. If the petition contains enough signatures, the clerk must "serve notice of that fact upon" the officeholder designated in the recall petition and deliver a copy of the petition to "the election

---

1. The language of East Cleveland City Charter, Section 50 could be read to mean that a recall may be held only against a member of city council and not against the mayor. However, Section 50 must be read in conjunction with Section 49, which establishes the procedures "to effect the removal of *any* elected officer of the city." (Emphasis added.)

authorities" along with the certification regarding the percentage of voters who cast ballots at the last municipal election. *Id.*, Section 54.

{¶ 4} The officeholder designated in the recall petition may resign within five days of the clerk's certification. *Id.*, Section 54. If the designated officeholder does not resign within that five-day period, "the election authorities shall forthwith order and fix a day for holding a recall election," with the fixed day being no later than 90 days after the expiration of the five-day resignation period. *Id.*

{¶ 5} Provisions in the Revised Code also address the recall of a municipal officeholder. R.C. 705.92(A) provides that a recall petition "shall contain a general statement in not more than two hundred words of the grounds upon which the removal of the person is sought." East Cleveland's city charter does not require a general statement, nor does it require that the affidavit contain reasons for seeking the removal of the officeholder.

### B. Background

{¶ 6} In July 2022, Charles N. Holmes Sr. delivered an affidavit to the clerk of the East Cleveland city council seeking to recall King from office. Holmes's affidavit listed the following reasons to recall King:

> (1) The Mayor does not reside in the City of East Cleveland as the charter requires.
>
> (2) The Mayor has spent money not appropriated by Council. This has been confirmed by the Fiscal Oversight Commission.
>
> (3) The Mayor has used City contractors for personal work (demolition of the home he received from the land bank) which he should have returned to the city when he did not rehab it.
>
> (4) The Mayor's spending is keeping the City of East Cleveland in debt. King's administration has given away $1.4

million in real estate to his friends with no payments to the City of East Cleveland. How is the City supposed to prosper and come out of debt? He doesn't care.

(5) In a letter to State Representative Cupp and State Senator Hoffman, the State Auditor stated that he doesn't see East Cleveland coming out of fiscal distress within the near future.

(6) Mayor King appointed Willa Hemmons as Law Director and Charles Iyahen as Finance Director, but has not brought them in front of City Council for approval as is required by the charter.

(7) Mayor King has not been transparent and refuses to provide all contracts and related information to Council for storage in the Council office as is required by the Charter.

(8) Mayor King forbids Mr. Iyahen, alleged Finance Director, to meet with Council members or other citizens except in Council meetings.

(9) The Mayor is not transparent with regard to City finances and refuses to provide information requested by Council members.

(10) The Mayor was given a grant application to obtain millions of dollars from the State of Ohio which would benefit the citizens of East Cleveland. King never submitted the application because it didn't fit into "his plans" and "what he wanted to do." He doesn't care.

The clerk issued blank recall petitions to Holmes.

{¶ 7} On August 9, the clerk certified to the board that Holmes had submitted 34 part-petitions containing 531 signatures to her office. The board then reviewed the part-petitions and certified 322 signatures as valid. On August 12, the clerk notified King that the petition contained enough valid signatures to qualify

4

for the ballot. The clerk informed him that he had the option to resign within five days and that if he chose not to do so, a recall election would be held.

{¶ 8} On August 17, King wrote that he had "NO INTENTION of resigning." (Capitalization sic.) King requested that a special election be held on October 25, 2022. Upon receipt of King's answer, the clerk ordered the board to fix a day for the recall election.

{¶ 9} At the board's regular meeting on August 22, King renewed his request to hold the recall at a special election in October. Instead, the board ordered the recall election to appear on the November 8 general-election ballot.

{¶ 10} On September 2, King submitted a written challenge against the petition to the board. In his protest letter, King asserted: "ORC 705.92 prohibits more than 200 words in the General Statement on the Petition Affidavit. However, the General Statement purporting to set forth the grounds for my Recall numbered more than 500 words."

{¶ 11} In response to King's protest, the board's staff requested a legal opinion from East Cleveland Law Director Willa Hemmons whether R.C. 705.92 applies to a recall initiated under the city charter. On September 2, Hemmons provided her legal opinion, observing that "there is nothing in the City's Charter that addresses word limitations in a Recall petition's General Statement of grounds. It is silent on the issue." Citing the legal rule that when a charter is silent on a matter, state law applies, Hemmons concluded that R.C. 705.92, limiting the number of words to 200, controls. "Hence, a 500 word General Statement on a Recall petition violates the process and thus nullifies the subject Recall petitions."

{¶ 12} The board considered Hemmons's opinion at its September 12 meeting. However, the board took no action to decertify the recall petition. The board concluded that the city charter places the duty to certify the validity of the petition on the city clerk and following that certification, the board's duties are purely ministerial. In addition, at least one board member concluded that because

the city charter does not expressly incorporate R.C. 705.92 or limit the number of words in the general statement, there is no such limitation.

{¶ 13} At the same meeting, the board declined to place on the ballot a recall election against a different officeholder, Councilperson Korean Stevenson. With respect to the Stevenson recall petition, the board found that Moore, who had circulated some of the part-petitions against her, had been convicted of securities fraud and other federal offenses. An assistant county prosecutor informed the board that under Ohio law, a person convicted of a state or federal criminal offense is barred from circulating petitions and that Ohio law restores that right after certain state-law convictions but not after federal convictions. Based on that advice, the board disqualified 50 signatures on part-petitions circulated by Moore, which left the recall petition against Stevenson without the requisite number of valid signatures to qualify for the ballot.

{¶ 14} King filed his complaint for a writ of mandamus against the board on September 13. On September 20, he filed a motion for a peremptory writ of prohibition, arguing that he would suffer irreparable harm and that his claim would be rendered moot if early voting began with the recall election still on the ballot. This court denied the motion. 167 Ohio St.3d 1524, 2022-Ohio-3361, __ N.E.3d __. The parties filed briefs and evidence. On October 3, after the close of briefing, Moore filed a motion for leave to intervene in support of King, which the board has opposed.

### C. The motion for leave to intervene

{¶ 15} In his motion for leave to intervene, Moore alleges a significant interest in the outcome of this case because the board's decision to invalidate the part-petitions he had circulated against Stevenson violated his constitutional rights. According to Moore, because the board erred as a matter of law when it invalidated the Stevenson part-petitions that Moore had circulated, this court should not only grant King's writ of mandamus, but it should also reverse the board's decision to

6

set aside Moore's circulated part-petitions for the recall of Stevenson and recognize Moore's right to circulate electoral petitions. We deny the motion for leave.

{¶ 16} Moore's motion did not specify whether he was seeking intervention as of right under Civ.R. 24(A)(2) or permissive intervention under Civ.R. 24(B)(2). Under Civ.R. 24(A)(2), when intervention is timely sought and disposition of the action may impair the applicant's ability to protect its interest, intervention must be granted unless the applicant's interest is adequately represented by an existing party. *State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, 172 N.E.3d 114, ¶ 8. Civ.R. 24(B) allows a court to permit an applicant's intervention based on a showing that the applicant's claim or defense has a question of law or fact in common with the main action. But in exercising its discretion, a court must consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam*, 156 Ohio St.3d 458, 2019-Ohio-1676, 129 N.E.3d 393, ¶ 10.

{¶ 17} Generally, we construe Civ.R. 24 liberally to permit intervention. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41. But in this case, we deny the motion under both Civ.R. 24(A) and (B), for at least three reasons. First and foremost, Moore has not alleged a protectable interest that may be impaired (the standard for intervention of right), nor has he identified a claim or defense that shares a question of law or fact with the issues in this case (the standard for permissive intervention). Moore seeks an adjudication of his status as a reinfranchised elector and a determination that the Stevenson recall part-petitions that he circulated are valid. Neither question is relevant to the case before the court. In other words, Moore does not explain why he has an interest in the status of the King recall petition or have a legal argument to present that is relevant to whether the King recall election should appear on the ballot.

**{¶ 18}** Second, Moore has not sought *timely* intervention. This expedited election case had been pending for three weeks and was fully briefed when Moore filed his motion, and early absentee voting starts next week (October 12).

**{¶ 19}** Finally, Civ.R. 24(C) requires that a motion to intervene be accompanied by a pleading setting forth the claim or defense to be asserted. Moore did not attach a proposed pleading; this failure alone is reason to deny the motion. *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 121 Ohio St.3d 507, 2009-Ohio-1523, 905 N.E.2d 1192, ¶ 21.

**{¶ 20}** For these reasons, we deny Moore's motion for leave to intervene.

### D. Merits

#### 1. Standard of review

**{¶ 21}** To be entitled to a writ of mandamus, King must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide that relief, and (3) he does not have an adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. As to the third element, King lacks an adequate remedy in the ordinary course of the law due to the proximity of the election, which is less than five weeks away. *See State ex rel. West v. LaRose*, 161 Ohio St.3d 192, 2020-Ohio-4380, 161 N.E.3d 631, ¶ 15.

**{¶ 22}** The first two elements require us to determine whether the board engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable law. *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. King has not alleged fraud or corruption. An abuse of discretion "connotes an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

*2. The board challenges this court's jurisdiction*

**{¶ 23}** As a preliminary matter, we address the board's contention that this court lacks jurisdiction to reach the merits of this case because King is actually seeking a declaratory judgment and a prohibitory injunction, although he has framed the case as a mandamus claim. Specifically, the board contends that King is seeking a declaratory judgment that Hemmons's legal opinion is correct and an injunction to prevent his recall election from appearing on the ballot.

**{¶ 24}** This court has original jurisdiction in mandamus actions. Ohio Constitution, Article IV, Section 2(B)(1)(b). However, if the allegations of a complaint indicate that the real objects sought are a declaratory judgment and a *prohibitory* injunction, then the complaint does not state a claim in mandamus and must be dismissed for lack of jurisdiction. *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (1999).

**{¶ 25}** "What distinguishes a proper mandamus complaint from an improper one is *not* whether the relator is seeking declaratory judgment as part of the complaint but whether the complaint seeks to prevent or compel official action." (Emphasis sic.) *State ex rel. Ethics First–You Decide Ohio Political Action Commt. v. DeWine*, 147 Ohio St.3d 373, 2016-Ohio-3144, 66 N.E.3d 689, ¶ 10. When "declaratory judgment would not be a complete remedy unless coupled with ancillary extraordinary relief in the nature of a *mandatory* injunction, the availability of declaratory judgment does not preclude a writ of mandamus." (Emphasis added.) *State ex rel. Arnett v. Winemiller*, 80 Ohio St.3d 255, 259, 685 N.E.2d 1219 (1997). The court "examin[es] the complaint to determine whether it actually seeks to prevent, rather than compel, official action." *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20; *see also State ex rel. Smith v. Indus. Comm.*, 139 Ohio St. 303, 306, 39 N.E.2d 838 (1942) ("The functions of an injunction are ordinarily to restrain motion and enforce inaction, while those of mandamus are to set in motion and compel action").

{¶ 26} King's complaint states a claim for relief that would compel the board to perform an affirmative act: the prayer for relief demands a writ of mandamus "to compel [the board] to decertify the Recall Petitions." The complaint does not seek a prohibitory injunction. "[T]he difference between a request for a writ of mandamus in the nature of a mandatory injunction (over which this court has original jurisdiction) and a request for a writ of mandamus in the nature of a prohibitory injunction (over which it does not) is temporal." *State ex rel. Gadell-Newton v. Husted*, 153 Ohio St.3d 225, 2018-Ohio-1854, 103 N.E.3d 809, ¶ 13. A prohibitory injunction seeks to prevent an injury that has not yet occurred. *Id*.; *see also State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 12 ("a prohibitory injunction is used to prevent a future injury, but a mandatory injunction is used to remedy past injuries").

{¶ 27} The injury in this case has already occurred: the board placed the recall election on the ballot. King is seeking to compel an affirmative act to remedy that injury, not to prevent an act in the future. The relief he seeks is therefore a mandatory injunction, also known as a writ of mandamus, which this court has original jurisdiction to grant.

### 3. Laches

{¶ 28} The board contends that King's mandamus claim is barred by laches. In election cases, a relator must act with the utmost diligence. *State ex rel. Syx v. Stow City Council*, 161 Ohio St.3d 201, 2020-Ohio-4393, 161 N.E.3d 639, ¶ 11. Laches may bar relief in an election-related matter if the person seeking relief fails to act with the requisite diligence. *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30. The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

**{¶ 29}** The board argues that King failed to exercise reasonable diligence by waiting until September 2022 to file his mandamus complaint. According to the board, King should have sought judicial review of his R.C. 705.92 claim in August when the board ordered that the election should appear on the November ballot, in July when the clerk permitted Holmes to circulate a petition, or even in 2015 when King was the subject of another affidavit in support of a recall petition that exceeded 200 words.

**{¶ 30}** However, "a party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay." *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 10. The prejudice "must be material before laches will bar relief." *Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 26. In this case, the board has not alleged any prejudice resulting from King's delay. We therefore reject the board's laches defense. *See State ex rel. Halstead v. Jackson*, ___ Ohio St.3d ___, 2022-Ohio-3205, ___ N.E.3d ___, ¶ 19 (rejecting a laches defense because the respondents failed to prove prejudice).

*4. The mandamus claim*

**{¶ 31}** The board declined to decertify the King recall petition primarily because it believed that it lacked the authority to do so. King argues that the board was wrong, because R.C. 3501.11(K)(1) provides that a board of elections shall "[r]eview, examine, and certify the sufficiency and *validity* of petitions." (Emphasis added.) The board responds that the city charter governs the recall process, and the charter gives the board only ministerial duties.

**{¶ 32}** The board is correct that it has no authority to assess the validity of a recall petition. Rather, under the charter, "the Clerk of the Council shall certify upon such petition whether the signature of *electors* thereto amount in number to at least twenty-five (25) percent of the voters voting at the last regular municipal election of officers." (Emphasis added.) East Cleveland City Charter, Section 53.

By using the term "electors" in Section 53, the charter requires the clerk to certify the number of *valid* signatures, not simply to report the gross number of signatures on the petition. And once the clerk provides her certification, the charter gives the board no discretion: the board "*shall* forthwith order and fix a day for holding a recall election." (Emphasis added.) *Id.*, Section 54.

{¶ 33} The board had no authority under the charter to decertify the King recall petition; therefore, whether the board acted inconsistently when it invalidated part-petition signatures on the Stevenson recall petition is not relevant.

{¶ 34} Given our holding, we will not address the question whether the 200-word limitation in R.C. 705.92(A) applies to recall petitions under the East Cleveland City Charter. Because the board had no authority to decertify the recall petition, any statement we might offer as to whether the board would have been correct to apply the statute in this matter would be an advisory opinion. And we have "recogniz[ed] the 'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more.' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 362 F.3d 786, 799 (C.A.D.C.2004) (Roberts, J., concurring in part and concurring in the judgment).

### III. CONCLUSION

{¶ 35} For the reasons discussed herein, we deny the motion for leave to intervene and we deny the writ of mandamus.

Writ denied.

O'CONNOR, C.J., and DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, FISCHER, and BRUNNER, JJ., concur in judgment only.

_____

Willa M. Hemmons, East Cleveland Law Director, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mark R. Musson, Assistant Prosecuting Attorney, for respondent.

_____